1 GUIDO SAVERI (22349)
guido@saveri.com
2 R. ALEXANDER SAVERI (173102)
rick@saveri.com
3 CADIO ZIRPOLI (179108)
cadio@saveri.com
4 **SAVERI & SAVERI, INC.**
706 Sansome Street
5 San Francisco, CA 94111
Telephone: (415) 217-6810
6 Facsimile: (415) 217-6813

FILED

2010 FEB 24 P 2: 02

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

7 JOSEPH W. COTCHETT (36324)
jcotchett@cpmlegal.com
8 STEVEN N. WILLIAMS (175489)
swilliams@cpmlegal.com
9 ARON K. LIANG (228936)
aliang@cpmlegal.com           JOSEPH M. ALIOTO (42680)
10 **COTCHETT PITRE & McCARTHY**   **ALIOTO LAW FIRM**
840 Malcolm Road, Suite 200    555 California Street, Suite 3160
11 Burlingame, CA 94010          San Francisco, CA 94104
Telephone: (650) 697-6000     Telephone: (415) 434-8900
12 Facsimile: (650) 697-0577     Facsimile: (415) 434-9200

13                **UNITED STATES DISTRICT COURT**

14              **NORTHERN DISTRICT OF CALIFORNIA**

15                  **SAN FRANCISCO DIVISION**

EMC

16 Prisco Electric Company, Inc., d/b/a Prisco     Case No.: **C 10 0782**
   T.V. & Appliance, on behalf of itself and all
17 others similarly situated,

18                          Plaintiff,        **CLASS ACTION COMPLAINT**

19          v.                                **VIOLATION OF THE SHERMAN**
                                              **ANTITRUST ACT**
20 SONY CORPORATION;
   SONY OPTIARC AMERICA INC.;
21 SONY OPTIARC INC.;
   SONY NEC OPTIARC INC.;                     **JURY TRIAL DEMANDED**
22 HITACHI, LTD.;
   LG ELECTRONICS INC.;
23 HITACHI-LG DATA STORAGE, INC.;
24 TOSHIBA CORPORATION;
   SAMSUNG ELECTRONICS CO., LTD.;
25 and
26 TOSHIBA SAMSUNG STORAGE
   TECHNOLOGY CORPORATION;
27
28                          Defendants.

_____

CLASS ACTION COMPLAINT

1    Plaintiff Prisco Electric Company, Inc., d/b/a Prisco T.V. & Appliance, a direct purchaser of

2  Optical Disk Drive Products as defined below, individually and on behalf of the Class described

3  below, brings this class action against Defendants for damages under the antitrust laws of the

4  United States, and hereby demands trial by jury. Plaintiff alleges that Defendants conspired to fix,

5  raise, maintain, and stabilize the price of Optical Disk Drive Products sold in the United States

6  during the Class Period as defined below, including through price-fixing, bid-rigging and market

7  allocation. As a result of Defendants' unlawful conduct, Plaintiff and members of the proposed

8  Class paid higher prices for Optical Disk Drive Products than they would have paid in a competitive

9  market.

10                                    **NATURE OF THE ACTION**

11    1.    Optical disk drives are one of the largest growing markets in the electronics industry.

12  In the United States and across the world, almost all forms of home entertainment and data storage

13  are on optical disks, either in CD format, DVD format, or now in Blu-Ray disc format. The

14  Defendants and their co-conspirators in this case control over 90% of this multibillion dollar a year

15  market. Optical disk drives were a gold mine for the Defendants. An investigation by the United

16  States DOJ has been launched into the market for optical disk drives for anticompetitive conduct.

17  These Defendants have a long history of engaging in anticompetitive conduct, having consistently

18  sought to price fix a wide variety of products sold in the United States, such as Dynamic Random

19  Access Memory ("DRAM"), Thin Film Transistor Liquid Crystal Display ("TFT-LCD") and

20  Cathode Ray Tude ("CRT"). Through business meetings across the world, as well as at trade

21  association meetings specific to their industry, these Defendants entered into an agreement and

22  conspiracy to fix the price of Optical Disk Drives. When the price of ODD began to dip, the

23  Defendants entered into an illegal agreement to prevent competitors from entering into the market

24  and to keep prices at a supracompetitive level.

25    2.    This case arises out of a long-running conspiracy from at least October 1, 2005 until

26  the present ("the Class Period"), among Defendants and their co-conspirators, with the purpose and

27  effect of fixing, raising, maintaining and stabilizing prices for Optical Disk Drive Products sold

28  directly to Plaintiff and other direct-purchasers who purchased such products in the United States.

1    3.    Defendants, the leading manufacturers of optical disk drives, and their co-
2  conspirators formed an international cartel to illegally restrict competition in the Optical Disk Drive
3  Product market, which included targeting and burdening direct purchasers who made purchases in
4  the United States. During the Class Period, the conspiracy affected billions of dollars of commerce
5  throughout the United States. The conspiracy included communications and meetings in which
6  Defendants agreed to eliminate competition and fix the prices for Optical Disk Drive Products. As
7  a result of Defendants' price-fixing conspiracy, Plaintiffs have been injured in their business and
8  property by paying more for Optical Disk Drive Products than Plaintiffs otherwise would have paid
9  in the absence of Defendants' conspiracy.

10    4.    An optical disk drive is a disk drive that uses laser light (or electromagnetic
11  wavelength) to read and/or write data to or from an optical disk, such as a Compact Disc (CD), a
12  Digital Video Disc (DVD), or the more recently-developed Blu-Ray Disc (BD). Optical disk drives
13  are an integral part of stand-alone consumer electronics appliances such as CD players/recorders,
14  DVD players/recorders, and Blu-Ray Disc players/recorders that are used to store and play music
15  and movies. Optical disk drives are also widely used in computers to read and write data for a
16  variety of uses, including software programs and data compilations, and to store and play music and
17  video in much the same way as in stand-alone consumer electronics products with optical disk
18  drives. As a result, in computers, optical disk drives (along with flash memory drives) have largely
19  replaced "floppy" disk drives and the even-older tape drives that used magnetic disks or tapes to
20  record and store data. In consumer electronics, products with optical disk drives (e.g. CD players
21  and DVD players/recorders) have also displaced many of the consumer electronics products
22  previously used to record and play music and video (e.g. cassette decks, VCRs).

23    5.    As used herein, Optical Disk Drive Products include both optical disk drives (e.g.
24  CD drives, DVD drives, Blu-ray drives) manufactured by any of the named Defendants or their
25  affiliates, subsidiaries or co-conspirators, as well as products that contain optical disk drives (e.g.
26  DVD players, video game consoles like the Sony PlayStation 3, personal computers with DVD
27  drives) manufactured by any of the named Defendants or their affiliates, subsidiaries or co-
28  conspirators. Many of the Defendants are not only the major manufacturers and sellers of optical

1  disk drives, but they are also some of the largest manufacturers and sellers of computers and

2  consumer electronics products that contain optical disk drives.

3          6.      Plaintiff brings this action seeking treble damages, injunctive relief, and costs of suit

4  (including reasonable attorneys fees) under Section 1 of the Sherman Act, 15 U.S.C. § 1, and

5  Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover for the injuries that Plaintiff and all others

6  similarly situated sustained as a result of the Defendants' conspiracy to fix, raise, maintain and

7  stabilize the prices of Optical Disk Drive Products.

8          7.      Except where specifically stated otherwise, all allegations herein are on information

9  and belief.

10                              **JURISDICTION AND VENUE**

11         8.      This action arises under Section 1 of the Sherman Act and Section 4 of the Clayton

12  Act.

13         9.      Jurisdiction of this Court is founded on Sections 4 and 16 of the Clayton Act, 15

14  U.S.C. § 15, 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and on 28 U.S.C. §§

15  1331, 1337.

16         10.     Venue as to defendants is proper in this district pursuant to 15 U.S.C. §§ 15(a), 22,

17  and 28 U.S.C. § 1391(b), (c), in that more than one defendant resides in the judicial district, is

18  licensed to do business and/or is doing business in this judicial district.  The interstate trade and

19  commerce described herein has been carried out, in part, within this district.

20         11.     Defendants are subject to this Court's jurisdiction because of their nationwide

21  contacts and other activities, as well as their contacts and other activities with the State of

22  California.

23                                    **PARTIES**

24  **A.    Plaintiff**

25         12.     Plaintiff Prisco Electric Company, Inc., d/b/a Prisco T.V. & Appliance ("Plaintiff")

26  was a company located in East Haven, CT.  During the Class Period, plaintiff directly purchased

27  Optical Disk Drive Products from one or more Defendants or their controlled subsidiaries.  As a

28  result of the conspiracy, Plaintiff has been economically injured in that the prices it paid for Optical

1    Disk Drive Products have been artificially raised to anti-competitive levels by Defendants and
2    therefore it paid more than it otherwise would have paid.

3    **B.     Defendants**

4        13.     Defendant **Sony Corporation** is a business entity organized under the laws of Japan,
5    with its principal place of business located at 1-7-1, Konan, Minato-Ku, TKY 108-0075, Japan.
6    During the Class Period, Sony manufactured, sold and/or distributed Optical Disk Drive Products
7    throughout the United States.

8        14.     Defendant **Sony Optiarc America Inc.**, formerly known as Sony NEC Optiarc Inc.,
9    is a wholly owned subsidiary of Sony Optiarc Inc. Sony Optiarc America Inc. is a Delaware
10   corporation with its principal place of business located at 1730 N. First Street, San Jose, California
11   95112. Sony Optiarc America Inc. was originally established as a joint venture in April 2006
12   before Sony announced that it would take over NEC's 45% share on September 11, 2008. During
13   the Class Period, Sony Optiarc America Inc. manufactured, sold and/or distributed Optical Disk
14   Drive Products throughout the United States.

15       15.     Defendant **Sony Optiarc Inc.** is a Japanese company with its headquarters located at
16   4-16-1 Okata, Atsugi-shi, Kanagawa 243-0021, Japan. During the Class Period, Sony Optiarc Inc.
17   manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States.

18       16.     Defendant **Sony NEC Optiarc Inc.** was a Japanese company with its headquarters
19   located at 4-16-1 Okata, Atsugi-shi, Kanagawa 243-0021, Japan. Defendant Sony NEC Optiarc Inc.
20   was created on April 3, 2006 as a joint venture between defendants Sony Corp. and NEC Corp. in
21   which Sony Corp. had a 55% interest and NEC Corp. had a 45% interest. Sony Corp. purchased
22   NEC Corp.'s interest in Sony NEC Optiarc Inc. in 2008 and renamed it Sony Optiarc Inc. During
23   the Class Period, Sony NEC Optiarc Inc. manufactured, sold and/or distributed Optical Disk Drive
24   Products throughout the United States.

25       17.     Defendants Sony Corporation, Sony Optiarc America Inc., Sony NEC Optiarc Inc.,
26   and Sony Optiarc Inc. are referred to individually and collectively herein as **"Sony."**

27       18.     Defendant **Hitachi, Ltd.**, is a business entity organized under the laws of Japan with
28   its principal executive office at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280, Japan.

4

1   Hitachi, Ltd. controls an integrated global enterprise comprised of itself and other entities including
2   defendant Hitachi-LG Data Storage, Inc. During the Class Period, Hitachi, Ltd., manufactured, sold
3   and/or distributed Optical Disk Drive Products throughout the United States.

4   19.     Defendant **LG Electronics Inc. ("LG")** is a business entity organized under the laws
5   of Korea, with its principal place of business at 26/F Twin Tower South 20, Yeouido-Dong,
6   Yeoungdeungpo-Gu, Seoul, SEO 150-721, South Korea. LG controls an integrated global
7   enterprise comprised of itself and other entities including defendant Hitachi-LG Data Storage, Inc.
8   During the Class Period, LG manufactured, sold and/or distributed Optical Disk Drive Products
9   throughout the United States.

10   20.     Defendant **Hitachi-LG Data Storage, Inc.** is a business entity organized under the
11   laws of Japan with its principal place of business located at 4F MSC Center Building, 22-23 Kaigan
12   3-Chome, Minato-Ku, Tokyo, Japan, 108-0022. Hitachi-LG Data Storage, Inc. is a joint venture
13   formed in January 2001 and is owned 51% by defendant Hitachi and 49% by defendant LG. During
14   the Class Period, Hitachi-LG Data Storage, Inc. manufactured, sold and/or distributed Optical Disk
15   Drive Products throughout the United States.

16   21.     Defendant **Toshiba Corporation ("Toshiba")** is a business entity organized under
17   the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo
18   105-8001, Japan. Toshiba Corp. controls an integrated global enterprise comprised of itself and
19   other entities including defendant Toshiba Samsung Storage Technology Corp. During the Class
20   Period, Toshiba manufactured, sold and/or distributed Optical Disk Drive Products throughout the
21   United States.

22   22.     Defendant **Samsung Electronics Co. Ltd. ("Samsung")** is a business entity
23   organized under the laws of South Korea, with its principal place of business at Samsung Main
24   Building 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Korea. Samsung controls an integrated
25   global enterprise comprised of itself and other entities including defendant Toshiba Samsung
26   Storage Technology Corp. During the Class Period, Samsung manufactured, sold and/or distributed
27   Optical Disk Drive Products throughout the United States.

28

1    23.    Defendant **Toshiba Samsung Storage Technology Corp.** is a business entity
2  organized under the laws of Japan with its principal place of business located at Solid Square 580,
3  Horikawacho, Saiwai-Ku, Kawasaki, KNG 212-0013, Japan.  Toshiba Samsung Storage
4  Technology Corp. is a joint venture formed in 2004 and owned 51% by defendant Toshiba and 49%
5  by defendant Samsung.  During the Class Period, Toshiba Samsung Storage Technology Corp.
6  manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States.

7    24.    On information and belief, other partnerships, corporations, or other business
8  entities, unknown to Plaintiff, are co-conspirators with Defendants in their unlawful restraint of
9  trade.  These other co-conspirators have facilitated, adhered to, participated in, and/or
10  communicated with others regarding the conspiracy.

11    25.    The conduct alleged herein was Defendants' conduct or actions ordered or done by
12  Defendants' officers, agents, employees, or representatives, while engaged in the usual management
13  of Defendants' business.

14                              **AGENTS AND CO-CONSPIRATORS**

15    26.    Various persons that are not named as Defendants herein have participated as co-
16  conspirators in the violations alleged herein and have performed acts and made statements in
17  furtherance thereof.  Plaintiffs reserve the right to name some or all of these persons as Defendants
18  at a later date.

19    27.    Co-conspirator **Koninklijke Philips Electronics N.V. ("Philips")** is a business
20  entity organized under the laws of The Netherlands, with its principal place of business at
21  Groenewoudseweg 1, Eindhoven 5621 BA, The Netherlands.  Philips controls an integrated global
22  enterprise comprised of itself and other entities including defendant Philips & Lite-On Digital
23  Solutions Corporation.  During the Class Period, Philips manufactured, sold and/or distributed
24  Optical Disk Drive Products throughout the United States.

25    28.    Co-conspirator **Lite-On IT Corporation ("Lite-On")** is a business entity organized
26  under the laws of Taiwan, with its principal place of business at 12-15F, 392, Jui Kuang Road,
27  Taipei City, TAP 11492, Taiwan.  Lite-On controls an integrated global enterprise comprised of
28  itself and other entities including defendant Philips & Lite-On Digital Solutions Corporation.

6
CLASS ACTION COMPLAINT

1   During the Class Period, Lite-On manufactured, sold and/or distributed Optical Disk Drive Products
2   throughout the United States.

3        29.     Co-conspirator **Philips & Lite-On Digital Solutions Corporation** is a business
4   entity organized under the laws of Taiwan, and a joint venture between Koninklijke Philips
5   Electronics N.V. and Lite-On IT Corporation established in March 2007, with its principal place of
6   business located at 16F, 392, Jui Kuang Road, Taipei City, TAP 11492, Taiwan. During the Class
7   Period, Philips & Lite-On Digital Solutions Corporation manufactured, sold and/or distributed
8   Optical Disk Drive Products throughout the United States.

9        30.     Co-conspirator **Philips & Lite-On Digital Solutions USA, Inc.** is a Delaware
10  corporation with its principal place of business located at 42000 Christy Street, Fremont, California
11  94538. During the Class Period, Philips & Lite-On Digital Solutions USA manufactured, sold
12  and/or distributed Optical Disk Drive Products throughout the United States.

13       31.     Whenever in this complaint reference is made to any act, deed or transaction of any
14  corporation, the allegation means that the corporation engaged in the act, deed or transaction by or
15  through its officers, directors, agents, employees or representatives while they were actively
16  engaged in the management, direction, control or transaction of the corporation's business or
17  affairs.

18       32.     Defendants are also liable for acts done in furtherance of the alleged conspiracy by
19  companies they acquired through mergers and acquisitions.

20       33.     Each of the Defendants named herein acted as the agent of, co-conspirator with, or
21  joint venturer of the other Defendants with respect to the acts, violations and common course of
22  conduct alleged herein. Each Defendant that is a subsidiary of a foreign parent acts as the United
23  States agent for Optical Disk Drives and/or Optical Disk Drive Products made by its parent
24  company.

25                          **CLASS ACTION ALLEGATIONS**

26       34.     Plaintiff brings this action both on behalf of itself, and as a class action pursuant to
27  Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of the following class (the
28  "Class").

All individuals and entities who, during the period from October 1, 2005 through the present (the "Class Period"), purchased Optical Disk Drive Products in the United States directly from the defendants or their subsidiaries. Excluded from the Class are defendants and their parents, subsidiaries, affiliates, and all governmental entities.

35.     The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff believes that the members of the Class are geographically dispersed throughout the United States, and that joinder of all Class members would be impracticable. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff believes that there are, at least, thousands of members of the Class and that their identities can be learned from Defendants' books and records.

36.     Plaintiff's claims are typical of the claims of the other members of the Class because plaintiff directly purchased Optical Disk Drive Products from one or more of the defendants.

37.     Plaintiff and the members of the Class directly purchased Optical Disk Drive Products at artificially maintained, non-competitive prices established by the actions of Defendants and their unnamed co-conspirators in connection with the restraint of trade alleged herein. Plaintiff and the members of the Class have all sustained damage in that they paid inflated prices for Optical Disk Drive Products due to Defendants' conduct in violation of federal law as complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and antitrust litigation.

39.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether Defendants engaged in a contract, combination or conspiracy among themselves to fix, maintain, or stabilize the price of Optical Disk Drive Products sold in the United States;

1         (b)   Whether the conduct of Defendants caused the prices of Optical Disk Drive

2              Products to be artificially inflated;

3         (c)   Whether defendants engaged in a contract, combination, and/or conspiracy to

4              restrict output of ODD Products sold in the United States;

5         (d)   Whether Defendants' conduct caused injury to the members of the Class and,

6              if so, the proper measure of damages;

7         (e)   Whether plaintiff and the other members of the Class are entitled to, among

8              other things, injunctive relief, and if so, the nature and extent of such

9              injunctive relief; and

10        (f)   Whether Defendants undertook actions to conceal the unlawful contract,

11             combination or conspiracy described herein.

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

**INTERSTATE TRADE AND COMMERCE**

42. During the Class Period, each Defendant, or one or more of its subsidiaries, sold Optical Disk Drive Products in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

43. During the Class Period, Defendants collectively controlled a majority of the market for Optical Disk Drive Products, globally, in the United States and within this district.

44. The business activities of the Defendants substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

45. Sony Optiarc Inc., had sales of $1.52 billion for the year ended March 2008, the last year for which Sony disclosed the unit's annual revenue.

1      46.    Hitachi-LG Data Storage had revenue of $2.4 billion in 2005, the last year for which

2  figures are available, while Toshiba Samsung Storage forecast revenue of 250 billion yen in fiscal

3  2004 when it was established.

4      47.    Samsung in 2008 estimated that the optical disk drive market for personal computers

5  is 313 million units per year and the optical disk drive market for all other applications (e.g.,

6  automotive audio and video, personal video recorders, set top boxes, CD/ DVD players and

7  recorders, camcorders, and game consoles) is 200 million units per year.

8                                    **FACTUAL ALLEGATIONS**

9  **A.    Optical Disk Drive Technology**

10      48.    Optical discs contain microscopic pits where data are stored. These pits are made

11  from a crystalline metal alloy and are usually pressed into the disc in a spiral arrangement, starting

12  at the center of the disc. Once a disc containing information is inserted into the optical disk drive,

13  the disc spins while a lens inside the device guides a semiconductor laser beam over the disc and a

14  photodiode detects the light reflected from the disc's bumps and pits. The laser moves outward

15  from the center of the disc, scanning over the disc's surface. Then the photodiode reads the light's

16  reflection as a binary code (a series of ones and zeros) that the computer translates into usable data.

17  Changes in the intensity of the beams as the lasers hit the pits are detected and translated into

18  electrical signals. The more pits that can be packed onto the disc, the more data the disc can store.

19  The pits are approximately 0.8 micrometers on CDs, 0.4 micrometers on DVDs, and 0.15

20  micrometers on BDs. Reading the different disc formats requires the optical disk drive to have

21  lasers of different wavelengths. Blu-ray disc players use a shorter wavelength laser, which is blue-

22  violet, to read discs. Additional layers can be added to the disc as well, increasing storage capacity.

23  In addition to reading discs, optical disk drives can write and rewrite on the disc, depending on the

24  technology of the drive and accompanying disc.

25      49.    When a recordable disc (e.g., CD-R, DVD-R or BD-R) is inserted into an optical

26  disk drive that has the ability to record data, the optical disk drive's laser is used to selectively heat

27  parts of the organic photosensitive dye layer. By exposing the disc to light with the laser, the

28

1  reflective properties of the disc's surface change, which causes the photodiode to recognize these
2  changes as bumps and pits and read the new information on the disc.

3  50.  Optical disk drives include half-height and slim models.  Half height optical disk
4  drives are thicker and generally incorporated into desktop computer towers.  Slim optical disk
5  drives are thinner and generally incorporated into laptop computers.  As laptop computers have
6  become more popular with consumers, demand for slim optical disc drives has increased and is
7  expected to overtake half-height demand over the next five years. An optical disk drive is a disk
8  drive that uses laser light or electromagnetic waves as part of the process of reading or writing data
9  to or from optical disks.  Some drives can only read from disks, but other recent drives are
10  commonly both readers and recorders.  Recorders are sometimes called "burners" or "writers."
11  Compact discs, DVDs, and Blu-Ray disks are common types of optical media which can be read
12  and recorded by optical disk drives.

13  51.  An optical drive is about the size of a thick book.  The front of the drive has a small
14  Open/Close button that ejects and retracts the drive bay door.  This is how media like CDs, DVDs,
15  and BDs are inserted into and removed from the drive.  Where the disc drive is intended for internal
16  use in a computer, the sides of the drive have pre-drilled, threaded holes for easy mounting in the
17  drive bay in the computer case.  In that case, the optical drive is mounted so the end with the
18  connections faces inside the computer and the end with the drive bay faces outside.  The back end
19  of the optical drive generally contains a port for a cable that connects to the motherboard.  Also here
20  is a connection for power from the power supply.  Most optical drives also have jumper settings on
21  the back end that define how the motherboard is to recognize the drive when more than one is
22  present.  These settings vary from drive to drive.

23  **B.  Industry Background**

24  52.  The optical disk was invented in 1958.  In 1961 and 1969 patents were registered for
25  the analog optical disk for video recording.  In 1969 Philips began their first optical videodisk
26  experiments.  The first optical disk drive was invented with the creation of the audio compact disc
27  (audio "CD"), which was jointly invented by Sony and Philips Electronics ("Philips") and intended
28  to store analog video signals and store music and computer software.  In 1972, Philips announced a

11

1   technique for storing audio recordings on an optical disc with a small diameter. At the same time,

2   Sony was exploring optically recording audio on a larger disc but was focusing on developing an

3   error correction technique. In 1978, Sony and Philips agreed on a single format for the disc and the

4   error correction method that would be used. The compact disc system was introduced to the public

5   in Japan and Europe in 1982. Since the 1980s, several companies have created spin-offs of the CD

6   project by covering specific CD-based applications and extending the previously established

7   standards set by Sony and Philips.

8          53.    According to reporters who cover the Optical Disk Drive Products market, the

9   history of the industry, "although short, has been intense." The first-generation of optical disk

10  drives used CDs that could store 650 megabytes of data, but for several years the CDs were

11  available only in a read-only format (e.g. CD-ROMs). Once the standard of how to create a CD and

12  an optical device that reads the information on the CD were established, CD-ROM drives began to

13  penetrate the computer market. Optical disc drives have been in common use in computers since

14  the 1990s, when CD-ROM drives became affordable for the average consumer. In the mid-1990s, a

15  consortium of manufacturers developed the second generation of the optical disk, the DVD. The

16  second-generation of drives used DVDs that could store 4.7 gigabytes, but DVDs were more

17  quickly available in both a read-only format (e.g. DVD-ROMs) and a format that allowed both

18  reading and recording (e.g. DVD-RWs, DVD-RAMs). The DVD was intended to store great

19  amounts of data, including broadcast quality digital video. Optical disk drives using DVDs are

20  currently the most prevalent in both consumer electronics products and computers, but DVD drives

21  are now being replaced by the third-generation of optical disk drives.

22         54.    The third-generation of drives use Blu-Ray Discs (BDs) that can store in excess of

23  20 gigabytes, and also have both read-only and read/record formats. (Toshiba developed and

24  promoted a High-Definition ("HD")-DVD format for third-generation optical disk drives, but in

25  June 2008 Toshiba announced that it would no longer develop or manufacture optical disk drive

26  using HD-DVDs, and would instead use the Blu-Ray Disc format developed and promoted by

27  Sony.) In 2006, the specifications for the third generation optical disc, the Blu-Ray Disc format,

28  was finalized. The Blu-ray standard was developed by the Blu-Ray Disc Association, an industry

group which included makers of consumer electronics, computer hardware, and motion pictures. The Blu-Ray format was designed to supersede the DVD format and dramatically improve on the quality and capacity of the DVD. The Blu-Ray optical disc was meant to be able to distribute high-definition video and support greater data storage capacity than the DVD. Afterwards, manufacturers began to develop optical disc drives for computers that could read and write both DVDs and Blu-Ray discs. The third generation optical disks, Blu-ray and HD-DVD began in development in 2000 and were meant for distributing high-definition video and support greater data storage capacities.

55. Throughout the industry's history, but especially after 2000, the optical disk drive market, which requires significant technical resources and advanced manufacturing capabilities, has been dominated by a small group of manufacturers. The industry has also consistently been faced with downward pricing pressures, including those resulting from the technological advances in optical disk drive technology described above. As the defendants hone their ability to manufacture these Optical Disk Drive Products more efficiently and at a lower cost, the price of this technology invariably begins to decline. However, the defendants, sensing that the price of Optical Disk Drive Products was declining, decided to collude and enter into a price fixing agreement in order to prevent prices from dropping too far.

56. Today, optical disk drives are a standard component on almost every computer used in the United States. Due to the increasing popularity of personal computers, hundreds of millions of optical disk drives and Optical Disk Drive Products are shipped by defendants each year, generating billions of dollars in annual revenues. According to an IDC analysis, between 2004 and 2008, worldwide optical disk drive shipments generated over $45 billion in revenues. Digitimes research estimates that worldwide optical disk drive shipments increased at an annual rate of approximately 10%, exceeding 300 million by 2007. Between 2004 and 2008, the sale of Optical Disk Drive Products generated over $45 billion in revenues. According to Gartner, by 2013, the optical disk drive market will grow to $3.9 billion. Since the optical disk drives market is dominated by a group of manufacturers and it is oligopolistic in nature, the market is conducive to the collusive conduct alleged herein.

57.     Following are pictures of optical disk drives and disks:





58.     Optical disk drives are an integral part of stand-alone consumer electronics appliances such as CD players, DVD players/recorders, and Blu-Ray Disc players that are used to

1   play (and record) music and movies. Following are pictures of consumer electronics products that

2   contain optical disk drives:






1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21   59.   Optical disk drives, such as CD-ROM (read-only memory) drives and DVD-RW
22   (read/write) drives, are also widely used in computers to read and write data for a variety of uses,
23   including software programs and data compilations, as well to store and play music and video in
24   much the same way as in stand-alone consumer electronics products with optical disk drives.
25   Computer like this one contain optical disk drives:
26
27
28



60.     Defendant Sony's President and Electronics CEO, Ryobi Chubachi, stated after the signing of a Memorandum of Understanding between Sony and NEC in 2005 that "Optical disc drives are key components for a broad range of devices and we are strategically focused our development resources in this sector."  NEC's President Akinobu Kanasugi added that, "The market for high value-added drives to be integrated into PCs and consumer electronics products is rapidly expanding."

61.     As the Optical Disk Drives Products market has changed, the Defendants have consistently remained leaders in the industry as a result of their conspiratorial acts.  While the market for CD-ROMs has decreased, the market for Blu-Ray discs has grown exponentially as

1    consumers shift towards the new format. In a 2008 consumer survey, 56% of customer respondents

2    would consider purchasing a Blu-Ray disc player if there was a significant price drop. The

3    Defendants, acting in a non-conspiratorial manner, would have slashed their prices in an effort to

4    obtain as large a share of the market as possible. However, by entering into a price-fixing

5    agreement, each of the Defendants would be able to hold steady on their market share without any

6    significant price reductions.

7   **C.**    **Opportunity for Collusion**

8        62.    During the Class Period, the optical disk drive industry has experienced several

9    factors that have contributed to the opportunity for defendants and their co-conspirators to carry out

10    their conspiracy, including but not limited to: (1) market concentration, (2) joint venture

11    collaborations; (3) significant barriers to entry; (4) common trade associations and business

12    organizations; and (5) the standardization of Optical Disk Drive Products.

13        **i.**    **Market Concentration and Joint Ventures**

14        63.    Since the Optical Disk Drive Products market is dominated by a group of

15    manufacturers and it is oligopolistic in nature, the market is conducive to the collusive conduct

16    alleged herein. According to published reports, during the Class Period, the Optical Disk Drive

17    Products industry has been dominated by Defendants and their Co-Conspirators. During the Class

18    Period the joint venture between Hitachi and LG Electronics, Hitachi-LG Data Storage, had a 27%

19    market share; the joint venture between defendants Toshiba and Samsung, defendant Toshiba

20    Samsung Storage Technology had a 20% market share; defendant Sony Optiarc America had a 17%

21    market share; and Co-Conspirator Philips & Lite-On Digital Solutions Corporation had a 30%

22    market share. Together these defendants and Co-conspirators control over 90% of the global

23    market for Optical Disk Drive Products.

24        **ii.**    **Joint Venture Collaboration**

25        64.    In October of 2000 Hitachi, Ltd., and LG Electronics Inc. joined together to form

26    Hitachi-LG Data Storage, Inc. ("HLDS"), a joint venture company for the development, design and

27    marketing of optical disk drives. HLDS is majority owned by Hitachi in a 51/49 percent equity split

28    with its headquarters in Tokyo.

<div align="center">18</div>

1    65.    In April of 2003 Samsung Electronics and Toshiba Corporation signed a

2    memorandum of understanding. In January 2004 Samsung and Toshiba concluded an agreement to

3    integrate their optical disk drive businesses into a single entity. In April 2004 Toshiba Samsung

4    Storage Technology Corp and its Korean subsidiary were launched to develop, market and design

5    optical disk drives.

6    66.    In April of 2006, Sony Corporation and NEC Corporation joined forces to create

7    Sony NEC Optiarc Inc. At the formation of the joint venture, Sony had a 55% equity share and

8    NEC 45% and was projected to capture 20% of the optical disk drive market. On September 11,

9    2008, Sony purchased NEC Corp.'s interest in Sony NEC Optiarc, Inc., and renamed it Sony

10   Optiarc, Inc.

11   67.    In 2006, Lite-On IT acquired BenQ's Optical Disc Drive business to become the

12   second largest optical disc drive manufacturer in the world. Lite-On bought out the BenQ shares

13   under the deal and the joint venture was renamed Philips & Lite-On Digital Solutions.

14   68.    The joint ventures of each of these companies allowed them to share and have access

15   to each of their parent companies patents and technologies without the need to pay royalties.

16        **iii.    Barriers to Entry**

17   71.    There are significant manufacturing and technological barriers to entry into the

18   optical disk drive industry. In order to compete in the optical disk drive industry, companies

19   have to spend hundreds of millions of dollars in research and development, licensing, and

20   manufacturing of products. Moreover, the ownership and control exerted by defendants over

21   Optical Disk Drive Product technology and market share has allowed defendants to dictate who

22   enters the market and at what cost. These barriers to entry have made it extremely difficult for

23   smaller manufacturers of Optical Disk Drive Products to compete with defendants and

24   overcome the effects of economies of scale. Accordingly, the financial structure of the optical

25   disk drive industry allowed defendants to implement their antitrust conspiracy by eliminating

26   competition and artificially stabilizing the prices of Optical Disk Drive Products without losing

27   market share.

28

19

72.     Price-fixing and market allocation are easier to attain within a highly concentrated, fungible market for which adequate substitutes do not exist. All of these factors facilitate the implementation and maintenance of an antitrust conspiracy such as that perpetrated by Defendants and alleged herein. The facts do not support a finding of conscious parallelism. Instead, it is evident from the facts that Defendants communicated and conspired to the detriment of consumers of Optical Disk Drive Products.

### iv.     Trade Associations and Business Organizations

73.     Defendants acted to prevent downward pricing pressures from causing Optical Disk Drive Products to be sold at truly competitive prices, through means including price-fixing, bid-rigging and market allocation.

74.     Various industry trade organizations or events facilitated Defendants' Optical Disk Drive Products cartel activities. Defendants participated in many of those meetings and events to discuss Optical Disk Drive Products pricing and production with the purpose and effect of raising, fixing and stabilizing Optical Disk Drive Products prices. Such meetings occurred at or through the following industry trade associations and events:

75.     The Optical Storage Technology Association (OSTA), an international trade association formed in 1992 to promote the use of recordable optical technologies and products, and whose membership includes optical product manufacturers who represent more than 85 percent of worldwide writable optical product shipments, including LG and Sony.

76.     The last meeting of the OSTA took place between March 16-18, 2009 at the Pacific Business Centers at 19925 Stevens Creek Blvd, Cupertino, CA 95014. At that meeting, in which the Defendants were present, they were able to meet and communicate regarding the price-fixing conspiracy. Under the guise of an industry forum, the Defendants exchanged sensitive price information and ensured that all of them charged the same price for Optical Disk Drive Products.

77.     The DVD Forum, a global group of hardware manufacturers, software firms and content providers formed in 1997 to promote and improve standards for the DVD format and products associated with that format. Hitachi, LG, Lite-On, NEC, Philips, Samsung, Sony, and Toshiba are all members of the DVD Forum.

1    78.    The Steering Committee of the DVD Forum last met on September 10, 2009 at the

2    Universal Hilton Hotel in Los Angeles, California. Defendant Toshiba was the chair of that

3    Steering Committee meeting. At that meeting, the members of the conspiracy and other co-

4    conspirators communicated with each other about the conspiracy and agreed to continue to fix the

5    price of Optical Disk Drive Products sold across the world, including in the United States.

6    79.    The Blu-ray Disc Association, a worldwide group formed in 2005 to promote the

7    Blu-ray Disc format and products associated with that format, with members including Hitachi, LG,

8    NEC, Philips, Samsung, Sony, Toshiba.

9    80.    Defendants Sony, LG, and Hitachi are all founding board members of the Blu-ray

10   Disc Association which is an industry consortium that develops and licenses Blu-ray Disc

11   Technology. The Blu-ray Disc Association was established by the defendants to establish

12   standardized formats and cross license technology.

13   81.    Defendants Sony, LG, Hitachi, and Samsung all participated in the first meeting of

14   Blu-ray Disk patent owners in Los Angeles, California on July 6-7, 2006. The stated purpose of the

15   event was to create joint licensing agreements amongst the participating optical disk drive

16   manufacturers.

17   82.    The International Consumer Electronics Show, the world's largest consumer

18   electronics show, held annually. The 2010 International Consumer Electronic Show took place

19   from January 7-10, 2010 at the Venetian in Las Vegas, Nevada. One of the topics of conversation

20   at the show was the DOJ investigation into the Optical Disk Drive Products. Members of the

21   conspiracy communicated with each other about the conspiracy during the 2010 International

22   Consumer Electronics Show.

23   83.    The Optical Storage Symposium (OSS), a worldwide conference held annually from

24   2001-07.

25   84.    The conduct of the "business" of these organizations gave Defendants and their co-

26   conspirators the cover needed to contact one another to communicate competitive information.

27

28

21

1       **v.**     **Standardization of Optical Disk Drive Products**

2       85.     Since its inception in the 1970s, the optical disk drive industry has been typified by

3 standardization of discs (e.g., CD-ROMs, DVD-ROMs) and Optical Disk Drive Products driven by

4 industry participants and a variety of industry-related organizations such as ECMA International,

5 the International Standardization Organization ("ISO"), and the International Electrotechnical

6 Commission ("IEC"). These organizations and their members are dedicated to "standardizing the

7 use of information communication technology and consumer electronics."

8       86.     The optical disk drive industry is also subject to patents and intellectual property

9 rights which require adoption of standardized product specifications.

10      87.     The standardization of the Optical Disk Drive Products industry provided defendants

11 with the mechanism to implement, enforce, and oversee their anticompetitive conspiracy to fix the

12 price of Optical Disk Drive Products. Furthermore, as a result of this standardization, Optical Disk

13 Drive Products are commodity products, and buyers make decisions to purchase such products

14 based largely, if not exclusively, on price.

15 **D.**     **History of Collusion**

16      **i.**     **Previous Antitrust Violations**

17      88.     Defendants have been the subject of multiple government investigations for their

18 cartel activity in recent years. For example, Samsung admitted guilt and paid a \$300 million fine

19 following an investigation by the DOJ into price-fixing among manufacturers of dynamic random

20 access memory ("DRAM") computer chips.

21      89.     Many of the Defendants named herein, have a long history of collusion, and, are

22 either currently involved in worldwide investigations into other technology-related products, or

23 have admitted to participating in cartels involving technology-related products.

24      90.     In November of 2007, the EU fined Sony and various related entities and the Hitachi

25 Maxell Limited joint venture \$110 million for fixing the prices of professional videotapes sold in

26 Europe between 1999 and 2002. Similarly, Hitachi and Toshiba were fined by the European

27 Commission for their roles in a conspiracy to control prices and allocate market shares in the market

28 for gas-insulated switchgear between 1988 and 2004.

1    91.    More recently, the DOJ and the European Commission ("EC") have commenced

2  investigations of Samsung, Toshiba, LG and Hitachi, among others, concerning collusion among

3  manufacturers of thin-film transistor liquid crystal displays ("TFT-LCDs").

4    92.    In December of 2008, the Department of Justice ("DOJ") announced that LP

5  Display, a joint venture between LG and Philips, would plead guilty to a DOJ indictment alleging

6  antitrust price-fixing allegations with respect to TFT-LCDs. It has agreed to pay a \$400 million fine.

7    93.    On March 10, 2009, the DOJ announced that Hitachi Displays had pled guilty to

8  participation in the price-fixing conspiracy involving TFT-LCDs and had agreed to pay a \$31

9  million fine.

10    94.    Although it has not been publicly acknowledged by Samsung, it is widely believed

11  that defendant Samsung Electronics Co. Ltd. is in the U.S. DOJ leniency program with respect to

12  the DOJ's investigation into the market for TFT-LCD, meaning that it has admitted its participation

13  in the cartel. The TFT-LCD investigation is ongoing, and Toshiba Corporation, as well as other

14  entities, remain under investigation. Such criminal investigation is being conducted by the San

15  Francisco office of the DOJ's Antitrust Division.

16    95.    As in the TFT-LCD industry, many of the defendants here are not just the major

17  manufacturers and sellers of the price-fixed product, but they are also the major manufacturers and

18  sellers of the consumer electronics and computer products that contain the price-fixed product. For

19  example, the LG and Samsung entities manufactured and sold both TFT-LCD panels as well as

20  TFT-LCD flat panel televisions. Here LG and Samsung (and Hitachi, Toshiba, Philips, Lite-On and

21  Sony) manufacture and sell both optical disk drives (e.g. DVD drives) and finished products

22  containing those drives (e.g. DVD players, laptop computers).

23    96.    On October 7, 2009 in a cease and desist order, The Japan Fair Trade Commission

24  levied \$37.4 million in fines against five companies, including LG Philips Displays Korea Co. and

25  an arm of South Korea's Samsung group and their affiliates for alleged participation in a price-

26  fixing cartel for cathode ray tubes.

27    97.    The optical disk drive industry has a similar oligopoly structure to that of the TFT-

28  LCD, DRAM and CRT industries. The Defendants' entry into price-fixing agreements in those

1   markets (which include many of the same foreign players) supports the DOJ's investigation and
2   other evidence showing the existence of an anticompetitive conspiracy in the Optical Disk Drive
3   Products market.

4       98.     The established illegal conduct of Hitachi, LG and Samsung (as well as Philips and
5   Sony) in a wide variety of product markets across the world, including the United States, is
6   illustrative of Defendants' respective corporate cultures which encourage illegal activities aimed at
7   furthering the company's bottom line at the expense of consumers.

8       99.     For example, in November of 2007, Kim Yong Chul, the former chief lawyer for
9   Samsung, admitted that the company "instructed me to commit crimes." Chul continued, "[a] basic
10  responsibility for all Samsung executives is to do illegal lobbying, buying people with money."
11  Chul also acknowledged that he fabricated court evidence on behalf of the company and its
12  executives, and several Samsung executives have recently been convicted of bribery and other
13  white collar crimes.

14      **ii.     Antitrust Violations concerning Optical Disk Drive Products**

15      100.    Recently, defendants disclosed and news organizations reported that there is
16  currently a worldwide investigation by antitrust enforcement authorities into violations of antitrust
17  laws and other anticompetitive practices into the market for optical disk drives. In October of 2009,
18  the United States DOJ acknowledged that it had commenced an investigation into anticompetitive
19  conduct in the optical disk drive industry, and that in connection with that investigation it had
20  served subpoenas on defendants Sony Optiarc America, Hitachi-LG, and TSST. At the same time,
21  at least one defendant acknowledged that foreign antitrust enforcement agencies were also
22  investigating the optical disk drive industry.

23      101.    For example, on October 23, 2009, Sony Corporation disclosed the following in a
24  Form 6-K it filed with the SEC:

25          Sony Corporation said today that its U.S. subsidiary, Sony Optiarc America Inc.,
            has received a subpoena from the U.S. Department of Justice (DOJ) Antitrust
26          Division seeking information about its optical disk drive business. Sony
            understands that the DOJ and agencies outside the United States are investigating
27          competition in optical disk drives.

28

24

1    102.    On October 26, 2009, news sources reported that other companies, including

2    Toshiba, Hitachi, Samsung and LG have received DOJ subpoenas. According to one of the news

3    articles, an unnamed "source said the department began the probe in recent months, investigating

4    disk-drive makers for possible price-fixing, bid-rigging and allocation of markets."

5    103.    Sony has acknowledged that it believes the request for information from the U.S.

6    Department of Justice is part of a wider review of competition in the disk drive market by the DOJ

7    and competition authorities in other countries.

8    104.    On October 27, 2009, Hitachi Ltd. and Toshiba Corporation confirmed that, like

9    Sony Corporation, their optical disk drive operations in the United States received subpoenas from

10   the U.S. Department of Justice in a widening investigation into potential antitrust violations.

11   Additionally, they acknowledged that they were also under investigation by European Union and

12   Singaporean antitrust regulators.

13   105.    On October 27, 2009, a United States DOJ spokeswoman, Gina Talamona confirmed

14   that, "[t]he antitrust division is investigating the possibility of anticompetitive practices in the

15   optical disc drive industry."

16   106.    On October 28, 2009, it was announced that two of the major players in the Optical

17   Disk Drive Products market, Sony and Philips, were fined by the a foreign antitrust enforcement

18   agency, the Taiwan Fair Trade Commission, for their anticompetitive business practices in

19   connection with their abuse of monopoly power in the licensing of the technology for CD-Rs, the

20   discs that go into optical disk drives.

21   107.    Pricing trends for the optical disk drive technology have not followed the traditional

22   price declination expected from an older technology. In fact, despite HD-DVD vanishing from the

23   market, prices for Blu-Ray optical disk drives have remained substantially the same over time.

24   108.    It is significant that defendants' anticompetitive behavior has been the subject of a

25   criminal grand jury investigation by the DOJ. In order for the DOJ to institute a grand jury

26   investigation, a DOJ Antitrust Division attorney must believe that a crime has been committed and

27   prepare a detailed memorandum to that effect. *See* Antitrust Grand Jury Practice Manual, Vol. 1,

28   Ch. I.B.1 ("[i]f a Division attorney believes that a criminal violation of the antitrust laws has

25

1  occurred, he should prepare a memorandum requesting authority to conduct a grand jury

2  investigation.") Furthermore, following a review of the memorandum, the request for a grand jury

3  must be approved by the Assistant Attorney General for the Antitrust Division, based on the

4  standard that a criminal violation may have occurred. *See id.* In addition, the fact that the DOJ

5  Antitrust Division investigation is criminal, as opposed to civil, is significant as well. The Antitrust

6  Division's "Standards for Determining Whether to Proceed by Civil or Criminal Investigation"

7  state: "[i]n general, current Division policy is to proceed by criminal investigation and prosecution

8  in cases involving horizontal, per se unlawful agreements such as price fixing, bid rigging and

9  horizontal customer and territorial allocations." *See* Antitrust Division Manual, Chapter III.C.5.

10  Accordingly, the existence of a criminal investigation into the ODD industry supports the existence

11  of the conspiracy alleged herein.

12       109.    On or about October 1, 2005, the exact date being unknown to plaintiff, Defendants

13  entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and

14  commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

15       110.    Defendants participated in meetings and conversations to discuss the price of Optical

16  Disk Drive Products sold in the United States.

17       111.    Defendants agreed during those meetings and conversations to charge prices at

18  specified levels and otherwise to fix, increase, stabilize and/or maintain prices of Optical Disk

19  Drives sold in the United States.

20       112.    Defendants agreed to sell Optical Disk Drive Products at the agreed upon prices.

21       113.    Defendants sold Optical Disk Drive Products to various customers throughout the

22  United States at artificially inflated prices.

23       114.    The conspiracy alleged herein had and continues to have the following effects,

24  among others.

25       115.    As a result of the illegal conspiracy, prices charged to plaintiff and the Class for

26  Optical Disk Drive Products have been raised, fixed, maintained or stabilized at artificially inflated,

27  non-competitive levels.

28

1     116.   As a result of the illegal conspiracy, plaintiff and the Class have been deprived of the

2 benefits of free, open and unrestricted competition in the market for Optical Disk Drive Products.

3     117.   As a result of the illegal conspiracy, competition in establishing the prices paid in the

4 United States and worldwide for Optical Disk Drive Products has been unlawfully restrained,

5 suppressed and eliminated.

6     118.   By reason of the violations of Section 1 of the Sherman Act and Section 4 of the

7 Clayton Act, plaintiff and the members of the Class have sustained injury. As a direct result of

8 Defendants' conduct, the injury sustained by plaintiff and the Class is the payment of

9 supracompetitive prices for Optical Disk Drive Products. This is an antitrust injury of the type that

10 the federal laws were meant to punish and prevent.

11 <center>**FRAUDULENT CONCEALMENT**</center>

12     119.   Plaintiff and members of the Class did not discover and could not discover through

13 the exercise of reasonable diligence, the existence of the conspiracy alleged herein until October 26,

14 2009 when it was first publicly reported that manufacturers of optical disk drives were under

15 investigation by antitrust authorities in the United States, and elsewhere in the world, for

16 anticompetitive conduct.

17     120.   Because Defendants' agreements, understandings, and conspiracies were kept secret

18 until October 26, 2009, Plaintiff and members of the Class before that time were unaware of

19 Defendants' unlawful conduct alleged herein, and they did not know before that time that they were

20 paying artificially high prices for Optical Disk Drive Products throughout the United States during

21 the Class period.

22     121.   The affirmative acts of the Defendants alleged herein, including acts in furtherance

23 of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

24     122.   By their very nature, Defendants' price fixing conspiracy was inherently self-

25 concealing. The optical disk drives industry is not exempt from antitrust regulation, and thus,

26 before October 26, 2009, Plaintiff reasonably considered it to be a well-regulated competitive

27 industry.

28

<center>27</center>

1    123.    In the context of the circumstances surrounding Defendants' pricing practices,
2  Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable
3  person that Defendants' pricing was conspiratorial. Accordingly, a reasonable person under the
4  circumstances would not have been alerted to investigate the legitimacy of Defendants' Optical
5  Disk Drive Products prices before October 26, 2009.

6    124.    Plaintiff and members of the Class could not have discovered the alleged contract,
7  conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the
8  deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators
9  to avoid detection of, and fraudulently conceal, their contract, combination or conspiracy.

10   125.    Because the alleged conspiracy was both self-concealing and affirmatively concealed
11 by Defendants and their co-conspirators, Plaintiff and members of the Class had no knowledge of
12 the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent
13 person to investigate whether a conspiracy existed, until October 26, 2009, when reports of the
14 investigations into price fixing in the optical disk drives industry were first publicly disseminated.

15   126.    None of the facts or information available to Plaintiff and members of the Class prior
16 to October 26, 2009, if investigated with reasonable diligence, could or would have led to the
17 discovery of the conspiracy alleged herein prior to October 26, 2009.

18   127.    Defendants also consummated affirmative acts of concealment of the conspiracy,
19 including, inter alia, periodically issuing press statements falsely asserting that Optical Disk Drive
20 Products were competitively priced. For example, on June 4, 2007 Sony issued a press release
21 stating, "The player (Sony's Blu-Ray Disk Player) gives a broader consumer segment the
22 opportunity to experience the exceptional quality of Blu-ray format at a **competitive price**."
23 (emphasis added)

24   128.    As a result of Defendants' fraudulent concealment of their conspiracy, the running of
25 any statute of limitations has been tolled with respect to any claims that Plaintiff and members of
26 the Class have as a result of the anticompetitive conduct alleged in this Complaint.

27

28

1 | **VIOLATION OF U.S. ANTITRUST LAWS**

2 | 129. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully
3 | set forth herein.

4 | 130. Defendants entered into and engaged in a contract, combination or conspiracy in
5 | unreasonable restraint of trade in violation of Section 1 of the Sherman Act and Section 4 of the
6 | Clayton Act.

7 | 131. The contract, combination or conspiracy has resulted in an agreement, understanding
8 | or concerted action between and among Defendants in furtherance of which Defendants instituted,
9 | fixed, maintained, raised or stabilized prices for Optical Disk Drive Products. Such contract,
10 | combination, or conspiracy constitutes a per se violation of the federal antitrust laws and is an
11 | unreasonable and unlawful restraint of trade.

12 | 132. Defendants' contract, combination, agreement, understanding or concerted action
13 | occurred in or affected interstate and international commerce. Defendants' unlawful conduct was
14 | through mutual understandings or agreements by, between and among Defendants.

15 | 133. The contract, combination or conspiracy has had the following effects:

16 | a. Prices charged to Plaintiff and the class for Optical Disk Drive Products were raised,
17 | fixed, maintained or stabilized at higher, artificially inflated, non-competitive levels;

18 | b. Plaintiff and the Class have been deprived of the benefits of free, open and
19 | unrestricted competition in the market for Optical Disk Drive Products; and

20 | c. Competition in establishing the prices paid for Optical Disk Drive Products has been
21 | unlawfully restrained, suppressed and eliminated.

22 | 131. As a proximate result of Defendants' unlawful conduct, Plaintiff and the Class have
23 | suffered injury in that they have paid higher prices for Optical Disk Drive Products than they
24 | otherwise would have paid in the absence of the unlawful conduct of Defendants.

25 |
26 |
27 |
28 |

1

## **PRAYER FOR RELIEF**

2

WHEREFORE, the Plaintiff prays for relief as follows:

3      (1)     That the Court determine that this action may be maintained as a class action under

4   Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be certified as a

5   class representative and Plaintiff's counsel be appointed as counsel for the Class;

6      (2)     That the unlawful contract, combination or conspiracy alleged be adjudged and

7   decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the

8   Sherman Act and Section 4 of the Clayton Act;

9      (3)     That Plaintiff and the Class recover damages, as provided by law, determined to have

10   been sustained as to each of them, in an amount to be trebled in accordance with the antitrust laws,

11   and that judgment be entered against Defendants on behalf of Plaintiff and of the Class;

12      (4)     That Plaintiff and the Class recover treble damages, as provided by law;

13      (5)     That Plaintiff and the Class recover their costs of the suit, including attorneys' fees,

14   as provided by law;

15      (6)     That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and

16   the respective officers, directors, partners, agents, and employees thereof and all other persons

17   acting or claiming to act on their behalf be permanently enjoined and restrained from continuing

18   and maintaining the combination, conspiracy, or agreement alleged herein;

19      (7)     That Plaintiff and members of the Class be awarded pre-judgment and post-judgment

20   interest, and that such interest be awarded at the highest legal rate from and after the date of service

21   of the initial complaint in this action; and

22      (8)     For such other and further relief as is just under the circumstances.

23

24

25

26

27

28

1

## JURY TRIAL DEMANDED

2        Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury

3  of all of the claims asserted in this Complaint so triable.

4  Dated: February 24, 2010

5

6

GUIDO SAVERI (22349)

7    guido@saveri.com
R. ALEXANDER SAVERI (173102)

8    rick@saveri.com
CADIO ZIRPOLI (179108)

9    cadio@saveri.com
**SAVERI & SAVERI, INC.**

10   706 Sansome Street
San Francisco, CA 94111

11

JOSEPH W. COTCHETT (36324)

12  jcotchett@cpmlegal.com
STEVEN N. WILLIAMS (175489)

13  swilliams@cpmlegal.com
ARON K. LIANG (228936)

14  aliang@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**

15  840 Malcolm Road, Suite 200
Burlingame, CA 94010

16

JOSEPH M. ALIOTO (42680)

17  **ALIOTO LAW FIRM**
555 California Street, Suite 3160

18  San Francisco, CA 94104

19    Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT